UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON
CIVIL ACTION NO. 05-375-JBC

*ELECTRONICALLY FILED*

RICHARD WEYLAND and
JENNIFER WEYLAND,                                                                  PLAINTIFFS


V.        **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
          MOTION FOR PARTIAL SUMMARY JUDGMENT
          REGARDING TAX LIABILITY**


PETER BIRKHOLZ and
BIRKHOLZ AND COMPANY,                                                              DEFENDANTS.

* * * * * *

## Introduction

There are three principal issues in this case:

     1.    Whether Richard Weyland was exempt from "FICA" taxes under 26 U.S.C. § 3121;

     2.    If so, whether Peter Birkholz and his company were negligent in preparing the Weylands' tax returns in a manner that did not take advantage of this exemption; and

     3.    If so, to what extent the Weylands have suffered damages as a result of the negligence.

Questions 2 and 3 are factual issues that will be determined by a jury. Question 1 is a legal question for which there is a "yes" or "no" answer. The answer will be either entirely correct or entirely incorrect. It is not a matter to be entrusted to a jury to decide based on the jurors' assessment of the weight of the evidence, the credibility of the witnesses, and their own

life experiences. It is within the province of the Court to rule that Mr. Weyland was legally exempt or was not legally exempt based on the undisputed facts in the record.[1]

Plaintiffs have moved for partial summary judgment, requesting a ruling as a matter of law on Question 1. Plaintiffs assert that they are entitled to a ruling that Richard Weyland was not liable for FICA tax under 26 U.S.C. § 3121.

## Argument

When each of Defendants' four arguments is examined, it is crystal clear that there is no real factual dispute presented by the record in this case. Plaintiffs will address each of the Defendants' arguments in the order they were asserted.

### 1.   Independent Contractor Status

Defendants first assert, without qualification, that "Mr. Weyland was an independent contractor and 26 U.S.C. § 3121 only applies to employees and employers." *Response* at 1.

Despite being Defendants' leading argument as to the existence of a factual dispute, Defendants do not cite to a single piece of evidence in the entire record to support this bare assertion that Mr. Weyland was an independent contractor. In fact, only one unsupported sentence of Defendants' brief even purports to address the issue: Mr. Birkholz's deposition testimony that "Mr. Weyland was receiving form 1099's from Zapata Marine at some point early on." *Response* at 3.

In the volumes of documents produced in this case, there are repeated clear indications of Mr. Weyland's status as an employee that have never been disputed by Defendants, and there is no reference in the documents to him being an "independent contractor." Attached hereto as

---

[1] Notably, Defendants have not moved for Summary Judgment that Mr. Weyland *was* liable for the tax. There is simply no evidence to support such an argument.

2

"Exhibit A" are exemplars of various employment documents subpoenaed by Defendants. The employment records are replete with documents like the following:

- 5/18/94 letter from Tidewater Crewing Limited to Richard J. Weyland (T00077)

    "Tidewater Crewing Limited is offering you employment in Nigeria onboard the M/V Regent Seahorse in the capacity of Captain."

- 5/18/94 letter from Richard J. Weyland to Tidewater Crewing Limited (T00078)

    "I accept employment with Tidewater Crewing Limited in the capacity of Captain on-board the M/V Regent Seahorse."

- 4/20/94 letter from Tidewater Crewing Limited to Embassy of Angola (T00085)

    "This is to certify that Richard Joseph Weyland, United States Passport Number [] is employed by Tidewater Crewing Limited, in the capacity of Captain.

- December 16, 2002 agreement between Tidewater Crewing Limited and Richard Weyland, "Employee" (T00093)

    1.      In consideration of Company transporting **Employee** to the area of its operations and Company compensating **Employee** as specified in Clause 5 herein, **Employee** will proceed to such area, or to such other locations as **Company may direct** ("area of operations") on or about 14th, Dec. 2002, and upon arrival there, will faithfully serve aboard a marine vessel in a satisfactory manner in the capacity of Captain **or such other capacity as prescribed by the Company**. The area of operations to which Employee will proceed is Luanda, Angola.
        . . . .

    3.      **Employee** agrees to work **such hours and on such shifts as Company may designate**; and the Company shall have the right at any time, to change the vessel and/or area of operations to which **Employee** is assigned. It is understood that **Employee's wages** will not change in the event of a change in **Employee's** work hours, shifts, and/or vessel(s) to which **Employee** is assigned.

    4.      Company will provide **Employee** with passage from Lexington, Kentucky ("Point of Origin") to the area of operations and vice versa. Company reserves the right to select the type of transportation to be furnished; and **Employee** undertakes to proceed, with due speed to the area of operations on the date and by the route **selected by the Company**. **Employee** will be paid one-day travel each way at the base day rate listed in clause 5, for travel time. Travel days will not be eligible to be counted when calculating **Employee's** bonus (if

3

applicable). The one day of travel pay will apply regardless of how long it may take an employee to travel to or from the area of operations.

     5.    Company shall pay **Employee** total compensation of $295.00 per day, consisting of:
        a.    Base day rate of $295.00
        b.    Leave pay calculated as follows: 90x45. Leave Not Paid.
        c.    Area allowance (if applicable): $NA
        d.    Other allowance (if applicable): $NA
        BONUS (if applicable, a separate bonus document should be provided and signed by the Employee)
        STAND-BY PAY (up to 15 days maximum), if applicable: $NA

(Emphasis added).

*There are no less than ten similar agreements in the records.*

- 1/16/98 Personnel Action Form (T00135)

    Company Name: TCL [abbreviation for Tidewater Crewing Ltd]
    Base Rate of Pay: $210
    If Rate Changed, give previous rate: $200
    REMARKS: SALARY INCREASE

- 4/15/93 Personnel Action Form (T00222)

    Company Name: Tidewater Crewing
    PAF Transaction: Salary Change
    Base Rate of Pay: $175
    If Rate Change, give previous rate: $168
    REMARKS: MERIT INCREASE

*There are no less than ten similar Personnel Action Forms in the records.*

In addition to failing to address these records they subpoenaed, Defendants fail to address the documents submitted with Plaintiffs' Memorandum, such as:

- The Zapata Gulf Crews, Inc. "Employee Earnings/Deductions Register" for Mr. Weyland, attached to Plaintiffs' Memorandum as Exhibit D.

- The hundreds of payroll records from "Zapata Gulf Crews, Inc." and "Tidewater Crewing Ltd." which state: "Employee Statement of Earnings and Deductions" and set forth Mr. Weyland's "Employee Name" and "Employee Number" and "Reg Pay" and "Bonus", exemplars of which were also attached to Plaintiffs' Memorandum in Exhibits D and F, respectively.

4

- The "Report of Earnings to Employees – Year Ending December 31, 1992" from "Tidewater Crewing Limited, P.O. Box 1043, Georgetown, Grand Cayman, Cayman Islands" *which was produced from Mr. Birkholz's own files*, and is attached to Plaintiffs' Memorandum as Exhibit M.

Moreover, Defendants entirely dismiss the official Certificate provided to them by Tidewater to specifically address the very issues in this case.[2] This Certificate (attached to Plaintiffs' Memorandum as Exhibit E) states that:

> Tidewater Crewing Limited and Tidewater Marine L.L.C. are wholly-owned subsidiaries of Tidewater Inc.
>
> Richard J. Weyland is currently an employee of Tidewater Crewing Limited and has been employed by that company since 1992 and he has never been an employee of Tidwater Marine, L.L.C. or Tidewater Inc.; and
>
> Tidewater Marine Crewing Limited carries out no business in the U.S.A. and, until January 1, 2005, withheld no U.S.A. federal or state payroll taxes.

Defendants do not and cannot dispute the facts set forth in this Certificate. Instead, Defendants represent to the Court that "Tidewater Inc. does not seem to know what company Mr. Weyland worked for," and they attach an earlier Certificate that Tidewater explicitly revoked and explained had been generated in error. *Response* at 2. Defendants fail to attach to their Response the October 5, 2006, letter sent to them by Tidewater with the corrected Certificate (attached hereto as "Exhibit B"), which letter states:

> Dear Ms. Johnson [paralegal for Defendants' counsel]:
>
> It has come to my attention that the corporate structure document provided to you by our Jennie Taylor by letter dated June 21, 2006 in connection with the captioned matter contained a number of errors. Accordingly, I have examined Richard Weyland's employment file and have drafted a corrected corporate structure certificate for Mr. Goldblatt to sign. That corrected certificate is attached hereto and replaces the previous one, which is revoked and should be discarded.

---

[2] Contrary to Defendants' representations at pages 2 and 3 of their Response that these documents were "provided to Defendants by Plaintiffs" and that "Plaintiff [] produced" these documents, Defendants procured the documents directly from Tidewater by subpoena.

5

> We apologize for any inconvenience caused by the erroneous certificate. I do not know why/how such errors were made and I expect they were simply attributable to haste and inadvertent oversight.

There is simply no evidence in the record to support Defendants' bare assertion that Mr. Weyland was treated as an "independent contractor" at any point during the pertinent periods in this case. The only evidence offered by Defendants to support their allegation is Mr. Birkholz's own fleeting deposition reference to Mr. Weyland receiving 1099's "at some point early on." Notably, Defendant has not produced a single 1099 reporting compensation paid to Mr. Weyland anywhere in the two decades of documents produced.

If the Court permitted this issue to go to a jury, the jury would have no sufficient factual basis to conclude that Mr. Weyland was an independent contractor rather than an employee. By simply alleging "independent contractor" status, in the face of clear evidence to the contrary, Defendants have not created a sufficient issue of fact to defeat summary judgment.

**2.    Nationality of Mr. Weyland's Employer**

Defendants next allege that "even if Mr. Weyland is determined to have been an employee, there is evidence that he worked for an American owned company making 26 USC §3121 not applicable to him." *Response* at 1.

Defendants do not dispute that Zapata Gulf Crews Ltd. and Tidewater Crewing Ltd. are both non-American companies. Nor do they attempt to dispute the authenticity or veracity of the hundreds upon hundreds of payroll records reflecting the compensation paid by these companies directly to Mr. Weyland.

Instead, they summarily challenge the reality of his employment by these companies by reference to a handful of insignificant documents. Defendants' Exhibit A contains a 1999 flight itinerary generated by a travel agency; an interoffice memo from Tidewater Crewing's parent

company about bonus payments that were due (which were not paid by the parent company); an Emergency Contact notice from the parent company; six invoices from an outside vendor to the parent company regarding a training class; and three letters from the parent company regarding licensing requirements. Defendants' Exhibit B is a bank loan application for the Weylands in which "Tidewater Marine" is listed as the employer.

Defendants seem to suggest that because the parent company's name appears on these documents, Mr. Weyland could not have been an employee of a subsidiary company, despite the voluminous evidence described in section 1, above. This is hardly a sufficient factual allegation to overcome summary judgment. Mr. Weyland admitted that the Tidewater family of companies was certainly a "maze of names" to him, and there can be no dispute that many multi-national corporations utilize a complex structure of corporate entities to take maximum advantage of tax, licensing, and employment laws. Nevertheless, there is simply no dispute in the record that Tidewater Crewing Ltd. (and before that, Zapata Gulf Crews Inc.) was a legally created entity, organized and existing under the laws of another country, and that Mr. Weyland was employed and directly paid by this company during the pertinent period. To adopt Defendants' factual argument, the Court would have to find that notwithstanding any legal corporate structure, if a document exists that contains the parent company's letterhead or name, the whole corporate structure is to be disregarded and any employee of any subsidiary is deemed an employee (or independent contractor) of the parent. This is clearly not the state of corporate law.

Defendants argue, "There is also documentation from Zapata Gulf Marine Corporation concerning Mr. Weyland's insurance which seems to lead to the conclusion he was working for them at some point." *Response* at 3. Defendants are right about this. Mr. Weyland was working for Zapata Gulf Marine "at some point." That point in time – 1985, as reflected on the document

7

itself – was *prior* to the point at which Mr. Weyland became an employee of Zapata Gulf Crews, which began in 1986. Although Defendants suggest confusion over who employed Mr. Weyland at what point, the chronology is clear, and is set forth and documented in Plaintiffs' Memorandum at pages 2-3. Exhibits B, D and F to Plaintiffs' Memorandum confirm precisely who Mr. Weyland's employer was from 1986 through 2003, and by whom he was paid. Those are the only years for which the Weylands are making claims. Defendants have offered no sufficient evidence to contradict the identity of these employers for these periods, and have not even attempted to suggest that the employers were not in fact organized and existing under the laws of other countries (Panama and the Cayman Islands, respectively).

       **3.**      **26 U.S.C. § 1401 is not at all pertinent to the issues in this case.**

Defendants next argue that that "Mr. Weyland did have tax liability under 26 U.S.C. § 1401 for self-employment taxes." *Response* at 1. They base this argument on their unsupported assertion that: "Mr. Birkholz had been preparing Mr. Weyland's taxes for numerous years and had him as an independent contractor, not an employee. Mr. Weyland was self-employed and liable for self-employment taxes under USC §1401." *Response* at 3.

This argument is no different than Defendants' first argument above. Defendants are simply re-asserting that Mr. Weyland was an independent contractor, and thus, while §§ 3101 and 3121 would not apply (because they apply to employees), § 1401 would require payment of self-employment tax. As demonstrated above however, Mr. Weyland was not an independent contractor at any point during the pertinent period and was not treated as such by either of his employers. It makes no difference that Mr. Birkholz "had him as an independent contractor." That may very well be the explanation Mr. Birkholz offers for failing to take advantage of the exemptions in § 3121, but it does not change the fact that Mr. Weyland was an employee, and

thus, was not in any way affected by any provision of § 1401 relating to self-employed individuals.[3]

### 4. Mr. Birkholz's Negligence in Identifying the Exemption

Defendants finally argue that "there is a dispute whether Mr. Weyland provided accurate information to the Defendant, Peter Birkholz, concerning his status as an independent contractor versus an employee and the nationality of the companies he worked for." *Response* at 2.

Plaintiffs concede that there have at least been allegations by Mr. Birkholz that any errors in his preparation of returns were the fault of the Weylands. The Weylands do not need to disprove those allegations to succeed on this Motion. These allegations by Mr. Birkholz go to whether he was negligent or not. They do not go to whether Mr. Weyland was legally entitled to the exemption from FICA tax. The latter is the only issue before the Court on this Motion.

### Conclusion

The IRS has issued a final and binding determination, after a nearly year-long audit, that Mr. Weyland was entitled to the exemption from the FICA tax for 1999. (Exhibit H to Plaintiffs' Memorandum.) Defendants suggest the Court should ignore this official ruling for the following reason: "Peter Birkholz discussed this in his deposition and said the IRS could be wrong on this issue." *Response* at 5. While the IRS finding may not be technically dispositive in and of itself, when it is considered along with the evidence in support of Plaintiffs' Motion, it certainly

---

[3] Plaintiffs are genuinely at a loss as to the significance of Defendants' argument about the foreign earned income exclusion and whether Mr. Weyland had a "tax home" outside the United States. The foreign earned income exclusion has nothing whatsoever to do with an employee's exemption from FICA tax under § 3121, and the Defendants do not even argue that it impacts that issue. This case is not about whether Mr. Weyland was entitled to the foreign earned income exclusion.

provides substantial additional weight and cannot simply be ignored because Mr. Birkholz surmises it "could be wrong."[4]

Moreover, Mr. Birkholz prepared an amended return for the Weylands in 2003, representing to the IRS under penalty of perjury that: "Claimant (Richard Weyland) initially filed return subjecting Foreign wages to self employment tax.  Claimant captains a non American vessel that does not dock at a US port and works for a foreign employer."  (Exhibit G to Plaintiffs' Memorandum.)  Defendants' Response fails to address this statement, although Mr. Birkholz is obviously now asserting a different position to this Court.

Defendants have failed to establish legitimate material factual disputes to overcome Plaintiffs' Motion for partial summary judgment.  Where a motion for summary judgment is supported by the moving party, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but ... **must set forth specific facts** showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "Material facts are only those facts that might affect the outcome of the action under governing law."  Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995), citing Anderson.

---

[4] In the context of a tax proceeding, the IRS Commissioner's "determinations are presumed correct and petitioners bear the burden of proving them wrong." Pasternak v. Comm'r of Internal Revenue, 990 F.2d 893, 897 (6th Cir. 1993). The administrative determination of the amount due is "given the force of a judgment." Bull v. United States, 295 U.S. 247, 259-60 (1935).

The Weylands are entitled to judgment as a matter of law that they were not liable for FICA tax on Mr. Weyland's earnings from 1986 through 2003.

                                        Respectfully submitted,

                                        STOLL KEENON OGDEN PLLC
                                        300 West Vine Street, Suite 2100
                                        Lexington, KY 40507
                                        Ph. (859)231-3000
                                        Fax (859)253-1093
                                        david.royse@skofirm.com

                                        /s/  David T. Royse                      .
                                        COUNSEL FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

This is to certify that this Reply Memorandum has been electronically filed on this 16th day of February, 2007, with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to Hon. Ronald L. Green, Boehl, Stopher & Graves, 444 West Second Street, Lexington, KY 40507.

                                        /s/  David T. Royse                      .
                                        COUNSEL FOR PLAINTIFFS