UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 05-375-JBC

RICHARD WEYLAND and
JENNIFER WEYLAND,                                                                    PLAINTIFFS,

V.                       MEMORANDUM OPINION AND ORDER

PETER BIRKHOLZ and
BIRKHOLZ AND COMPANY,                                                            DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiffs' motion for partial summary judgment (DE 29). The court, having reviewed the record and being otherwise advised, will grant the motion in part and deny it in part.

I.      STANDARD OF REVIEW

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue exists only when there is sufficient evidence on which the jury could reasonably find for the nonmoving party. *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

The initial burden of showing the absence of a genuine issue of material fact is on the moving party. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*). Evidence that is "merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 249 (internal citations omitted). Furthermore, "the moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only 'show – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (quoting *Celotex*, 477 U.S. at 325).

## II.   BACKGROUND

Richard and Jennifer Weyland, the plaintiffs in this matter, have filed suit against both Peter Birkholz and his tax preparation business, Birkholz and Company,

for negligence in connection with the preparation of their tax returns.  According to the plaintiffs, at the direction of Mr. Birkholz, Mr. and Mrs. Weyland paid Federal Insurance Contributions Act ("FICA") taxes from 1986 through 2003 on Mr. Weyland's earnings as a ship's captain; however, the plaintiffs claim that the undisputed facts and the plain language of the relevant provisions of the tax code show that they were not liable for FICA taxes during this period.

The plaintiffs concede that the issue of whether Mr. Birkholz "was negligent in directing the Weylands to pay the tax is a separate issue, to be addressed in a separate motion or by trial to the jury." (DE 29-2 at 2.)  Therefore, the plaintiffs have filed the motion for summary judgment presently before the court solely for the "limited purpose" of determining, "as a matter of law, that the Weylands were not liable . . . for the FICA tax they paid" from 1986 until 2003. *Id.*

**III.   ANALYSIS**

This case involves several related entities with similar names but different nationalities.  Some of the entities, to which the court will refer collectively as "Zapata entities," have names such as "Zapata Gulf Marine Corporation" or "Zapata Gulf Crews, Inc."  Some of the entities, to which the court will refer collectively as "Tidewater entities," have names such as "Tidewater Marine, Inc.," or "Tidewater Crewing Limited."

According to the plaintiffs, Mr. Weyland was employed by Zapata entities from the mid-1970s until 1992.  More specifically, "[b]eginning in or about 1986,"

the plaintiffs claim that "Mr. Weyland was employed by 'Zapata Gulf Crews, Inc.,' a company organized and existing under the laws of Panama." (DE 29-2 at 2.) In August of 1992, following a merger involving some or all of the Zapata entities, the plaintiffs claim that Mr. Weyland became an employee of Tidewater Crewing Limited, a company organized and existing under the laws of the Cayman Islands. *Id.* at 3. There is no dispute about the existence or nationality of either of these specific entities. At both Zapata Gulf Crews, Inc., and Tidewater Crewing Limited, the plaintiffs claim that Mr. Weyland "was treated as an employee rather than an independent contractor" and did not receive 1099 forms. *Id.* Finally, the plaintiffs claim, and the defendants do not dispute, that Mr. Birkholz prepared tax returns directing the Weylands to pay FICA tax on Mr. Weyland's earnings every year from 1986 through 2003.

Neither party disputes the following facts: In 2003, Mr. Birkholz asked Mrs. Weyland if Mr. Weyland was employed by a foreign company. The Weylands told Mr. Birkholz that Mr. Weyland did work for a foreign company, and Mr. Birkholz indicated that they might not be subject to FICA tax. Therefore, on October 10, 2003, Mr. Birkholz prepared an amended return for the Weylands for the 1999 tax year, requesting a refund of the entire FICA tax previously paid for 1999. After an audit, the IRS approved the amended return and issued a refund for the Weylands' 1999 FICA tax. *See* DE 29-9.

Under 26 U.S.C. § 3121(b)(4), employment subject to FICA tax does not

include "service performed by an individual on or in connection with a vessel not an American vessel," provided that "(A) the individual is employed on and in connection with such vessel . . . when outside the United States and (B)(i) such individual is not a citizen of the United States or (ii) the employer is not an American employer . . . ."  According to the plaintiffs, discovery has been completed, "and there is absolutely no evidence to dispute that between 1986 and 2002, Mr. Weyland was employed by two different non-U.S. companies and conducted his work on vessels entirely outside United States waters."  (DE 29-2 at 5.)  Therefore, based on the undisputed evidence and the plain language of § 3121(b)(4), the plaintiffs conclude that they are entitled to summary judgment on the initial question of "[w]hether Richard Weyland was exempt from 'FICA' taxes under 26 U.S.C. § 3121 . . . ."  (DE 38-1 at 1.)

In response, the defendants argue that genuine issues of material fact preclude summary judgment on Mr. Weyland's FICA tax liability.  First, they claim that Mr. Weyland may have been self-employed or an independent contractor for some or all of the years at issue.  Because 26 U.S.C. § 3121(b)(4) applies only to employees of foreign employers, not independent contractors or the self-employed, the defendants argue that summary judgment on the initial tax liability question is inappropriate.  Second, the defendants claim that there is evidence that Mr. Weyland worked for an American-owned entity during the period in question.  Because Mr. Weyland is an American citizen, and because § 3121(b)(4) applies to

5

American citizens only if their employer is not an American employer, the defendants conclude that partial summary judgment is inappropriate.[1]

### A.    Was Mr. Weyland Self-Employed or an Independent Contractor?

26 U.S.C. § 1401(a) imposes a tax on the self-employment income of every individual.  Although the defendants concede that "it may be correct that Mr. Weyland was not subject to the taxes imposed by 26 U.S.C. § 3101," they claim that Mr. Birkholz was actually self-employed during some or all of the period at issue in this case, and therefore, they argue, he was still "liable under 26 U.S.C. § 1401 for self-employment tax."  (DE 31-1 at 3.)  To support the claim that Mr. Weyland may have been an independent contractor, the defendants rely upon testimony Mr. Birkholz provided in his deposition of June 16, 2006.

In his deposition, Mr. Birkholz testified that at some unspecified point, he "received 1099s from Zapata Marine" indicating that Mr. Weyland's tax status was that of "an independent contractor still subject to the same social security taxes under Section 1402."  (DE 29-18 at 42.)  At some unspecified subsequent point, Mr. Birkholz testified that "they" – either the Weylands or one of the Zapata

---

[1] The defendants also claim that Mr. Weyland did not always provide accurate information to Mr. Birkholz concerning the nationality of his employers and his own employment status; therefore, the defendants argue that partial summary judgment is inappropriate.

As an independent issue, however, the defendants' claims about Mr. Weyland's accuracy or honesty about his employers' nationality and his own status go to Mr. Birkholz's negligence, rather than the initial question of Mr. Weyland's tax liability; therefore, at this time, the court will consider Mr. Weyland's accuracy and honesty only in conjunction with the other issues raised by the defendants.

entities – "stopped sending documents[,]" presumably including the 1099 forms, and "sent a spreadsheet instead of that." *Id.* Mr. Birkholz also testified that in December 1993, Mr. Weyland informed him that Mr. Weyland's employer, "Zapata Marine," had been bought by "Tidewater"; however, Mr. Birkholz also testified that Mr. Weyland told him that "everything [was] exactly the same" and that Tidewater's acquisition of Zapata Marine was "just a name change . . . . [Mr. Weyland] assured me everything was the same and that, you know, I'm still thinking of him as a self-employed individual." *Id.* at 90-92.

In response, the plaintiffs have submitted documents from both Tidewater Crewing Limited and Zapata Gulf Crews, Inc., to support their contention that Mr. Weyland was directly employed by these entities rather than self-employed or an independent contractor. More specifically, the plaintiffs have submitted Mr. Weyland's "Payroll Summary" for every year from 1986 to 1992, and they have also submitted an "Employee Earnings Deductions Register" from "Zapata Gulf Crews, Inc." with Mr. Weyland's monthly pay for 1986. *See* DE 29-5. In addition, the plaintiffs have submitted Mr. Weyland's "Employee Statement of Earnings and Deductions" from "Tidewater Crewing Limited" for pay periods running from August 31, 1992, through December 31, 2003. *See* DE 29-7.

In addition to the payroll documents submitted with their original motion, the plaintiffs have also submitted several additional documents along with their reply. First, the plaintiffs have provided two letters written by "Tidewater Crewing

Limited" in 1994 – albeit from a New Orleans address – to Mr. Weyland or on Mr. Weyland's behalf.  *See* DE 38-2 at 1-3.  The plaintiffs have also submitted a 2003 "Working Agreement" signed by a representative of "Tidewater Crewing Limited" and Mr. Weyland in Malongo, Angola.  *See* DE 38-2 at 4-5.  Finally, the plaintiffs have submitted two "Personnel Action Forms" signed by Mr. Weyland in 1993 and 1998.  *See* DE 38-2 at 6-7.  These forms are printed with the Tidewater logo, and "TCL" and "Tidewater Crewing" have been written in a blank marked "Company Name."

The defendants do not contest the accuracy or validity of these documents, which were submitted along with the plaintiffs' motion for summary judgment. Therefore, regardless of whether Mr. Weyland was self-employed or an independent contractor before 1986 or after 2003, and regardless of what Mr. Weyland may have told Mr. Birkholz, the undisputed evidence shows that he was an employee of at least one Tidewater entity and at least one Zapata entity from 1986 until 2003. Accordingly, the court finds that there is no genuine factual dispute on this issue: for the years in question, the undisputed evidence shows that Mr. Weyland was neither an independent contractor nor self-employed.

**B.    Did Mr. Weyland Work for an American Company?**

In deposition testimony, Mr. Weyland has admitted that the relationship between the various Zapata and Tidewater entites was a "maze" to him, and the plaintiffs have further conceded that like many other multi-national corporations,

the various Tidewater and Zapata entities likely "utilize a complex structure of corporate entities to take maximum advantage of tax, licensing, and employment laws." (DE 38-1 at 7.) Nevertheless, the plaintiffs argue that this complexity is innocuous – at least with respect to Mr. Weyland's tax liability for the purposes of this suit – because the undisputed evidence demonstrates that Mr. Weyland was exclusively employed by either Tidewater Crewing Limited or Zapata Gulf Crews, Inc., for the entire period at issue in this suit.

In contrast, the defendants argue that partial summary judgment is inappropriate because there is evidence that Mr. Weyland was actually employed for part or all of the period in question by American rather than foreign employers, making him ineligible for the relief provided by 26 U.S.C. § 3121(b)(4). More specifically, based on sealed exhibits submitted along with their response to the plaintiffs' motion for partial summary judgment, the defendants claim that "[t]here is evidence that [Mr. Weyland] actually was at some point working for Tidewater Marine, LLC, which is organized in Louisiana." (DE 31-1 at 2.) Because the defendants' second sealed exhibit is sufficient to defeat the plaintiffs' motion for partial summary judgment, it will be discussed in greater detail.

This second sealed exhibit contains a "Request for Verification of Employment" form, which the Weylands filled out for a third-party lender, Fifth Third Bank. *See* DE 31-3. According to this form, Mr. Weyland was employed by "Tidewater Marine" at "200 Ford Industrial Road" in Amelia, Louisiana, and he

9

began working for Tidewater Marine on December 14, 1977. *Id.* at 1.  The form was filled out and signed on April 12, 1999, by Buffy R. Besson, who appears to have been employed by Tidewater Marine's personnel department. *Id.*

The court recognizes that the plaintiffs have presented a great deal of evidence in support of their position, including a retroactive refund from the IRS for 1999, the year in which Ms. Besson filled out the employment verification form for Fifth Third Bank on behalf of the Weylands.  Therefore, in order to accept the defendants' argument, a reasonable juror must first reject the plaintiffs' interpretation of the evidence at hand and then conclude that both Mr. Birkholz and the IRS examiners erred in 1999.  This is a tall order.

Nevertheless, the court finds that such a conclusion is at least possible when the evidence is viewed and all inferences from the evidence are drawn in the light most favorable to the defendants.  After all, Ms. Besson signed the employment verification form on behalf of the Weylands under a disclaimer that "[f]ederal statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspiracy . . . ."  (DE 31-3 at 1.)  Moreover, such a conclusion is even more plausible when the employment verification form is considered in conjunction with the suggestive documents in the defendants' first sealed exhibit.[2]  Therefore, because a reasonable juror could conclude that at least

---

[2] The first sealed exhibit includes plane reservations sent to Mr. Weyland on April 16, 1999, from a travel agency on behalf of "Tidewater Marine," an entity with an address listed on Poydras Street in New Orleans, Louisiana; a request for emergency contact information sent to Mr. Weyland on November 26, 2002, from

on April 12, 1999, Mr. Weyland was employed by an American entity known as "Tidewater Marine," the court finds that partial summary judgment on this issue is inappropriate.

**C.     Conclusion**

According to the plaintiffs, for this court to deny their motion for partial summary judgment, the court "would have to find that notwithstanding any legal corporate structure, if a document exists that contains the parent company's letterhead or name, the whole corporate structure is to be disregarded and any employee of the subsidiary is deemed an employee (or independent contractor) of the parent."  (DE 38-1 at 7.)  Contrary to this claim, however, the court's partial denial of their motion for summary judgment does not involve so sweeping a holding.  Despite – and in some instances because of – the substantial evidence presented by both sides, the corporate structure of the various Zapata and Tidewater entities over the period in question remains unclear.  Thus, at this time, the court simply finds that although it is clear that Mr. Weyland was directly employed by the Zapata/Tidewater entities for the period in question, it is unclear

---

a personnel coordinator at "Tidewater Marine LLC," which is printed on stationery belonging to "Tidewater Marine, Inc.," and showing an address at a post office box in Amelia, Louisiana; several letters sent to Mr. Weyland in 1999 and 2000 from Tidewater Marine, Inc., urging him to take the training courses and to complete the paperwork necessary to renew his license; copies of several bills for professional classes taken by Mr. Weyland in 2001, which appear to have been paid for by Tidewater Marine, Inc.; and an "Inter-Office Memo" from 1994, printed on what appears to be the letterhead of Tidewater Marine, Inc., which directs that Mr. Weyland be paid certian bonus allowances.  *See* DE 31-2.

whether he was employed by foreign employers, American employers, or some combination of the two.

Therefore, the court will grant in part the plaintiffs' motion for partial summary judgment: no genuine issue of material fact with respect to Mr. Weyland's employment status exists because the undisputed evidence demonstrates that he was neither self-employed nor an independent contractor; rather, he was an employee of at least one Zapata entity and one Tidewater entity during the period in question. But the court will also deny in part the plaintiffs' motion for partial summary judgment: genuine issues of material fact remain with respect to the nationality of Mr. Weyland's employer or employers from 1986 to 2003. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for partial summary judgment (DE 29) **GRANTED** in part and **DENIED** in part.

Signed on March 26, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY