UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON
CIVIL ACTION NO. 05-375-JBC

*ELECTRONICALLY FILED*

RICHARD WEYLAND and
JENNIFER WEYLAND,                                                    PLAINTIFFS


V.            **PLAINTIFFS' MEMORANDUM OF LAW
          REGARDING OFFSET OF POTENTIAL SOCIAL SECURITY BENEFITS**


PETER BIRKHOLZ and
BIRKHOLZ AND COMPANY,                                          DEFENDANTS.

* * * * * *

The Court has denied Defendants' Motion for Summary Judgment based on the alleged

offsetting benefit of social security payments as untimely.  (Order of 4/12/07, DE 69.)

Defendants have indicated they intend to attempt to raise the issue again at trial, perhaps in a

motion for directed verdict.  The Court has indicated it would be helpful to have the matter

briefed in the event the issue is raised at trial, and Plaintiffs believe the Court ordered that any

such briefing be submitted by June 5, 2007 (one week after the parties' first settlement

conference).  (Order of 4/30/07, DE 72.)  Plaintiffs therefore submit this Memorandum of Law

on the issue.

**FACTUAL BACKGROUND**

Mr. Weyland is a ship captain, and he has been working on ships since he graduated from

the Massachusetts Maritime Academy in 1971.  Defendants operate a professional tax

preparation business in Massachusetts.  Mr. Birkholz began preparing the Weylands' tax returns

in the early 1980s.  Later in the 1980s, the Weylands moved to New Jersey, and they finally

moved to Cynthiana, Kentucky, in the mid-1990s. Mr. Birkholz continued to prepare the Weylands' tax returns through the 2002 tax year. (Richard Weyland Depo. at 40-43, Exhibit "A."[1])

Beginning in or about 1986, Mr. Weyland was employed by "Zapata Gulf Crews, Inc.,´a company organized and existing under the laws of Panama. Zapata Gulf Crews, Inc., did not withhold social security taxes from Mr. Weyland's wages. In August 1992, Zapata was merged and Mr. Weyland became an employee of Tidewater Crewing Ltd., which is a non-American company organized and existing under the laws of the Cayman Islands. No taxes were withheld from Mr. Weyland's pay by Tidewater. This court has recognized that, as a matter of law, Mr. Weyland was an employee – not self-employed or an independent contractor – for the entire time period at issue in this case. (March 26, 2007, Order at 12.)

The wages earned by Mr. Weyland, as an employee working on a foreign ship outside the United States for a foreign employer, were exempt from Federal Insurance Contributions Act ("FICA") taxes. 28 U.S.C. § 3121(b)(4). Nonetheless, each year Mr. Birkholz prepared the Weylands' tax returns, and each year he determined that Mr. Weyland was required to pay the full amount of social security taxes for the year. The Weylands thus overpaid their taxes for each of the years Mr. Birkholz prepared their returns.

In August 2003, a telephone conversation between Mr. Birkholz and Ms. Weyland revealed Mr. Birkholz's error. (Jennifer Weyland Depo. at 168:14-171:11; 174:5-175:24, Exhibit "B."[2]) Although uncertain whether the FICA tax exemption in fact applied, Mr. Birkholz testified that he prepared and filed an amended tax return on the Weylands' behalf for

---

[1] The relevant excerpt is attached to this Memorandum. The full transcript is attached to Plaintiffs' Motion for Summary Judgment, DE 29, as Appendix A.

[2] The relevant excerpts are attached to this Memorandum. The full transcript is attached to Plaintiffs' Motion for Summary Judgment, DE 29, as Appendix B.

tax year 1999 in order to protect their right to a refund.  (1999 Amended Tax Return, Exhibit "C"; Peter Birkholz Depo. at 110:17-111:3, Exhibit "D."[3])  The IRS audited the amended return, and Mr. Birkholz remained involved with the Weylands' representation through at least September 2004.  The IRS eventually notified the Weylands by letter on January 19, 2005, that the amended return had been approved and a full refund for tax year 1999 would be issued. (Exhibit "E.")  The same error – that, in Mr. Birkholz's words, "Claimant (Richard Weyland) initially filed return subjecting Foreign wages to self employment tax.  Claimant captains a non American vessel that does not dock at a US port and works for a foreign employer" – was made in each of the returns that Mr. Birkholz prepared for the Weylands since 1986.

Although their expert, W. Thomas Cooper, CPA, did not include the theory in his expert report or testify as to any calculations made under this theory in his deposition,[4] Defendants now argue that the Weylands' overpayments will be returned to them in the future in the form of social security benefits, and that they therefore have not been damaged by Defendants' negligence.

## STANDARD OF REVIEW

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The non-moving party can avoid summary judgment by coming forward with evidence on which the jury could reasonably find in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  In ruling on a motion for summary judgment, the Court must view all of

---

[3] The relevant excerpts are attached to this Memorandum.  The full transcript is attached to Plaintiffs' Motion for Summary Judgment, DE 29, as Appendix C.

[4] Mr. Cooper's report and the transcript of his deposition are attached as Exhibits A and B to Plaintiffs' Second Motion in Limine.

the evidence in the light most favorable to the party opposing summary judgment.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ARGUMENT

Defendants contend that because the Weylands may potentially receive social security

benefits in the future as a result of their overpayment of social security taxes in the past, "[t]he

Weylands have suffered no loss in any legal sense of the word."  (Defendants' Memorandum in

Support of Motion for Summary Judgment, DE 54 at 7.)  Defendants argue that they are

therefore entitled to judgment as a matter of law.  Defendants rely on several internet resources

to establish the facts that underlie their argument.  Defendants' motion for the Court to take

judicial notice of these facts is addressed by separate memorandum, but the Weylands object to

judicial notice of these facts, and without their establishment summary judgment is clearly

inappropriate.  The Weylands further note that Defendants' expert has not relied on the internet

sources offered by Defendants, nor has he offered an opinion on the offsetting damages theory.

Thus this Motion constitutes an improper attempt by Defendants' counsel to testify as an expert

on the calculation of economic damages.

Notably, Defendants' argument wholly fails to acknowledge that the benefits the

Weylands may or may not receive some day are far from concrete.  Aside from well-publicized

concerns about the continued viability of a filly-funded social security program, the law of social

security is subject to change at any time – including the nature and amount of benefits available

and the requisite age and other requirements to qualify for benefits.  Most importantly, if the

Weylands both die tomorrow, they will never receive ***any*** benefit, whereas if they had kept their

funds they could have used or invested them for the benefit of themselves or their estates.

Nonetheless, even assuming the facts are as Defendants contend, Defendants are not entitled to judgment as a matter of law, because evidence of any potential social security benefits to which the Weylands may become entitled in the future is irrelevant and inadmissible. Because summary judgment rulings must be based on admissible evidence, Turner v. Scott, 119 F.3d 425, 430 (6th Cir. 1997), Defendants' motion must be denied.

**A.      Evidence of the Weylands' Potential Social Security Benefits is Inadmissible Under the Collateral Source Rule**

Under Kentucky law, "benefits received by an injured party for his injuries from a source wholly independent of, and collateral to, the tortfeasor will not be deducted from or diminish the damages otherwise recoverable from the tortfeasor." Schwartz v. Hasty, 175 S.W.3d 621, 626 (Ky. Ct. App. 2005). See also Black's Law Dictionary 256 (8th ed.) (defining collateral source rule as "[t]he doctrine that if an injured party receives compensation for its injuries from a source wholly independent of the tortfeasor, the payment should not be deducted from the damages that the tortfeasor must pay"). The main criterion for a collateral source – that it be "wholly independent" of the tortfeasor – is satisfied "when the wrongdoer has not contributed to [the source] and when payments to the injured party were not made on behalf of the wrongdoer." Schwartz, 175 S.W.3d at 627, quoting Pustaver v. Gooden, 566 S.E.2d 199, 201 (S.C. Ct. App. 2002).

Defendants did not contribute to the Weylands' social security funds, nor will any potential social security benefits paid to the Weylands be paid on Defendants' behalf. The Weylands' potential future social security benefits are wholly independent of Defendants, and those benefits therefore cannot be applied as a credit against Defendants' liability.

Furthermore, the Government's possible future obligation to pay social security benefits to the Weylands is unrelated to Defendants' current obligation to pay damages to the Weylands

for overpayment of social security taxes, and no offset should be allowed. <u>See United States v. Price</u>, 288 F.2d 448, 450-51 (4th Cir. 1961) (retirement benefits under Civil Service Retirement Act did not offset tort damages under Federal Tort Claims Act, because payments arose from separate duties and were made from different sources); <u>United States v. Harue Hayashi</u>, 282 F.2d 599, 603-04 (9th Cir. 1960) ("mother's insurance benefits" under Social Security Act do not offset damages under FTCA because former is paid from special fund supplied in part by decedent, and latter is paid from unfunded general tax monies); <u>see also</u> <u>Turnbull v. USAir, Inc.</u>, 133 F.3d 184, 186087 (2d Cir. 1998) (N.Y. collateral-source statute allows offset only where collateral source payment corresponds to category of loss for which defendant is liable).

Defendants' liability is triggered by their negligence and the resulting overpayment of social security taxes by the Weylands. By contrast, the potential social security benefits to which the Weylands may become entitled in the future will be triggered, if at all, by old age or disability. They are unrelated payments and therefore collateral. As collateral-source payments, the social security benefits do not offset the damages owed to the Weylands from Defendants for the Weylands' overpayments.

**B.     The "Special Benefit" Rule is Inapplicable to this Case**

Defendants argue that their negligence resulted in a net gain to the Weylands and that the Weylands' claims therefore must fail. In general, when tortious conduct causes both harm and benefit to the plaintiff's interest, "the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." Restatement (Second) of Torts, § 920 (1977). However, several important limitations on this principle render it inapplicable to this case.

First, damages to one interest are not reduced to the extent of a benefit to a ***different*** interest. <u>Id.</u>, cmt. (b). For example, increased earning capacity will not offset damages for pain

and suffering, and loss-of-consortium damages are not reduced by the benefit of no longer being obligated to support one's spouse.  Id.  In the Weylands' case, the interest damaged by Defendants' negligence is their interest in the present use of their money.  The interest arguably benefited by Defendants' negligence is the future interest in receiving sufficient social security benefits in the event of old age or disability.  Because the interests harmed and benefited are distinct, the benefit to the future interest does not offset the damages for harm to the present interest.

Second, in order to justify a credit for benefit to a plaintiff's interest, the defendant's tortious conduct must **directly cause** the benefit.  Id., cmt (d).  For example, damages for breach of contract and legal malpractice arising out of a land-sale contract cannot be offset by a subsequent increase in property value caused by improvements initiated by the sewer authority.  Gorski v. Smith, 812 A.2d 683, 708-10 (Pa. Super. 2002); see also Levi v. Schwartz, 95 A.2d 322, 328 (Md. 1953) (no mitigation of damages where increase in land value is due to city improvements enjoyed generally by all landowners).  The Weylands' potential entitlement to social security benefits is not directly caused by Defendants' negligence; if the Weylands receive social security benefits in the future, it will be because they have either attained old age or become disabled.  It will not be because Defendants negligently prepared their tax returns.  Defendants are therefore not entitled to deduct the amount of the Weylands' potential social security payments from the overpayments they caused the Weylands to make.

Third, "if the plaintiff is entitled to claim damages based upon a valuation of property at a particular time, the damages are not reduced by a subsequent beneficial event."  Restatement (Second) of Torts, § 920, cmt. (d).  The damages owed to the Weylands will be measured as of the date of judgment or payment.  If the Weylands benefit from overpaying social security taxes,

that benefit will not occur until the future time at which they become entitled to receive social security payments. Thus, the potential subsequent beneficial event cannot be used to reduce the Defendants' present liability.

Finally, Defendants should not have their liability reduced by the unwanted potential benefit – which is entirely speculative and remote – that they argue has been conferred by their tortious act. Dan B. Dobbs, Remedies: Damages – Equity – Restitution § 3.6 at 182, West Pub. Co. (Minn. 1984). Any assessment of credit must be made in light of the principle that "an injured person is entitled to be placed as nearly as possible in the position he would have occupied had it not been for the plaintiff's [sic] tort." The purposes of the general rule are to (1) limit the plaintiff's recovery to harm actually incurred; and (2) prevent tortfeasors from forcing benefits on plaintiffs against the plaintiffs' wills. Restatement (Second) of Torts, § 920, cmt. (f). This principle requires that where the plaintiff had devoted his property to a particular use, he is entitled to continue that use, "*and the person who interferes with the use is not entitled to have damages mitigated by the fact that he has added to their market value.*" Id. (emphasis added).

Dobbs gave the example of a farm damaged by a trespass that also increased the capital value of the land:

> The injury to use is immediate and present; the increase in capital value may never be realized .... Clear benefits, actually accrued, may well be offset. But doubts, surely, should be resolved against the tortfeasor, and he should have no credit for remote and uncertain "benefits", especially if they are unwanted.

Dobbs, § 3.6 at 182. The Second Circuit applied this principle in United States v. Ebinger, 386 F.2d 557 (2d Cir. 1967). The defendant in that case was sued for breach of contract after welding work performed by him caused a water tower to burn down. Damages were measured by the cost of replacing the water tower, which was less expensive than repairing the damaged

one.  The Court held that the defendant was not entitled to an offset for the value of having a newer water tower instead of an older one because "any increment in value by avoiding the possible need to replace the water tower [in the future] would be small and speculative."  Id. at 561.  The defendant *was* entitled, however, to a credit in the amount of maintenance expenses that would be avoided in the future because of the new water tower.  Id.

Allowing Defendants to apply the Weylands' potential future entitlement to social security benefits is not equitable.  The Weylands' entitlement to social security benefits is speculative, and it will not arise unless and until triggered by some future event unrelated to Defendants' tortious acts.  The Weylands preferred to retain control over their money and put it to present use instead of contributing it toward a social security program that is out of their control, is subject to changing legislation, and may or may not be fully funded.  Defendants deprived the Weylands of their right to allocate their earnings as they saw fit, and Defendants cannot alleviate their liability based on the fact that the Weylands may eventually receive social security benefits as a result of having overpaid their social security taxes.  Therefore, Defendants cannot claim a credit against their liability for any amount that the Weylands will potentially claim in social security benefits.

## CONCLUSION

The Weylands have suffered significant legal damage as a result of Defendants' negligence.  That the Weylands may (but may not) receive social security benefits at some time in the future based upon their contribution to social security taxes does not mitigate the damage inflicted by Defendants.  And any evidence of such future potential benefits is consequently irrelevant and inadmissible.  The Weylands therefore respectfully request that the Defendants' Motion for Summary Judgment be denied.

Respectfully submitted,

David T. Royse
Lynn Sowards
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507
Ph. (859)231-3000
Fax (859)253-1093


/s/ David T. Royse_____
COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that this Memorandum of Law has been electronically filed on this the

5th day of June, 2007, with the Clerk of Court using the CM/ECF system, which will send notice

of electronic filing to Hon. Ronald L. Green, Boehl, Stopher & Graves, 444 West Second Street,

Lexington, KY 40507.


/s/ David T. Royse_____
COUNSEL FOR PLAINTIFFS

LEX 107818/123017/3511300.1