Peter Birkholz 6-19-2006
Richard Weyland, et al. v. Peter Birkholz and Company

### 110

1  A. I didn't have the facts to make that statement. I
2  -- what I believed at the time was if we didn't file this,
3  the statute would toll, and they wouldn't have a shot at
4  it. I also believe that, because this is a fairly unique
5  situation, definitely was going to get audited, so we'd
6  have time to get the facts, etc. I looked up the statute,
7  and I just took verbatim out of the statute 3121.
8  Q. Okay. I understand. And I don't want to get in
9  an argument with you about this, but I have to believe that
10 somebody of your credentials and your experience would not
11 just put something on a document that you file with the IRS
12 without at least having a good faith belief that the facts
13 were, in fact, true, and what I'm asking is did you have
14 that good faith belief or did you just simply put down what
15 was necessary in order to satisfy the statute of
16 limitations, true or not?
17 A. I didn't -- I filed this as a protective, meaning
18 -- take a look at the date, October 10th. The statute
19 tolls, I believe, October 15th. I've got to get this back
20 to them and get it in. I didn't have time to do the
21 research. I didn't have time to explore the facts. I'm
22 not even sure Richard was in the country to discuss the
23 facts. And I believe that around this time, I sent a
24 letter to him asking for some additional data.

### 111

1  Q. I understand.
2  A. So I know what it looks like, but I filed this
3  purely as a protective claim.
4  Q. I understand and I'm not trying to pick nits about
5  it because I understand where you're coming from, but I'm
6  trying to be clear about whether you believe that your duty
7  to file documents with the IRS based on a good faith belief
8  that they're accurate. That's not alleviated to any extent
9  by the fact that a statute is about to run or you're filing
10 a protective tax return. I mean, you still have to have a
11 good faith belief in order to state something, right?
12 A. How can I say yes to that. No, I think that if
13 there isn't sufficient time, you know, I can file something
14 like this to protect their right to have the discussion
15 down the line.
16 Q. Okay. Is your testimony, then, that you did not
17 have a good faith belief that that was correct?
18 A. I had -- I didn't have the facts. I did it purely
19 to protect their right to have this issue discussed at a
20 later point in time.
21 Q. I'm going to hand you what I'll mark as Exhibit
22 25, and this is from that '99 tax file.
23     (Exhibit 25, Phone Memo, marked for
24     identification.)

### 112

1  Q. (By Mr. Royse) And I'll go ahead and tell you
2  we're not benefitted with a date on this phone memo, but
3  this came from the '99 tax file and somehow it was copied
4  along with a returned envelope dated November 14 of '00.
5  So I'm not going to try and get you to say what the date of
6  this was, but, in any event, I think it was probably around
7  2000 maybe. That phone memo there, is that your writing?
8  A. Looks like it.
9  Q. Do you have any recollection of what that was
10 about?
11 A. I'm having a little difficulty reading what it
12 says. No, I don't. If it's the '99 file, it may have been
13 around the time we had the conversation -- no. '99 file --
14 this is -- I can see from the postmark, there's -- I don't
15 know what that is. Let me explain something. If I went
16 back and prepared an amended return, this could be a phone
17 slip from 2003.
18 Q. Okay.
19 A. So I can't tell you what this is.
20 Q. And the documents that were provided to us out of
21 your file, those were copied on the same page, and it may
22 just be purely for space-saving reasons.
23     MR. ROYSE: I guess yours probably
24     looks the same on your computer, doesn't

### 113

1  it, Ron? I think I've got the same thing
2  as you?
3     MR. GREEN: Yeah. You would have an
4     exact copy.
5  Q. (By Mr. Royse) Okay. So you think this phone
6  note here could have been in 2003, could have been in 2000.
7  There's no way to tell?
8  A. Correct.
9  Q. Do you know what it references there? I see Tidex
10 at Chevroncam (phonetic) maybe?
11     MR. GREEN: Dot com.
12 Q. (By Mr. Royse) Yeah. Tidex2@chevron.com. Then
13 it says, I think, maybe office for Richard or -- I can't
14 read the rest of it. I see Rich name -- put Rich name. I
15 guess what I'm getting at is do you have any recollection
16 of making this note or what it referred to?
17 A. No.
18 Q. Move to tax year 2000 --
19     MR. ROYSE: Oh, I lied. I told you
20     I'd take a break. Let's go off the record.
21     (A brief recess was taken.)
22     MR. ROYSE: Let's go back on the
23     record, please.
24 Q. (By Mr. Royse) We are still in tax year 1999

29 (Pages 110 to 113)