UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 05-375-JBC

RICHARD WEYLAND and
JENNIFER WEYLAND,                                                                    PLAINTIFFS,

V.          MEMORANDUM OPINION AND ORDER

PETER BIRKHOLZ and
BIRKHOLZ AND COMPANY,                                                                DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the parties' supplemental briefs and memoranda of law regarding the plaintiffs' tax liability (DE 91, 92). Also before the court is the plaintiffs' motion in limine to exclude certain expert testimony offered by the defendants' expert, W. Thomas Cooper (DE 80), as well as several other motions in limine or motions for judicial notice (DE 62, 63, 70, 87). The court, having reviewed the record and being otherwise advised, will construe the parties' supplemental briefs and memoranda as motions for summary judgment or motions to dismiss on the issue of the plaintiffs' tax liability and will deny both motions (DE 91, 92). The court will also grant in part the plaintiffs' motion in limine (DE 80). The court will also deny, without prejudice, the remaining motions in limine or motions for judicial notice (DE 62, 63, 70, 87) because the court has already indicated to the parties that it will resolve these motions, if necessary, at trial.

**I.    BACKGROUND**

Richard and Jennifer Weyland, the plaintiffs in this matter, have filed suit against both Peter Birkholz and his tax preparation business, Birkholz and Company, for negligence in connection with the preparation of their tax returns. According to the plaintiffs, at the direction of Birkholz, Mr. and Mrs. Weyland paid Federal Insurance Contributions Act ("FICA") taxes from 1986 through 2003 on Mr. Weyland's earnings as a ship captain; however, the plaintiffs claim that the undisputed facts and the plain language of the relevant provisions of the tax code show that they were not liable for FICA taxes during this period because he was an employee of a foreign employer on a foreign ship outside the United States.

On March 26, 2007, the court considered the plaintiffs' motion for partial summary judgment on the limited question of whether the plaintiffs were liable for the FICA tax they paid from 1986 until 2003 (DE 29). The court granted that motion in part and denied it in part (DE 42). More specifically, the court found the undisputed evidence demonstrates that Mr. Weyland was neither self-employed nor an independent contractor but rather "an employee of at least one Zapata entity and one Tidewater entity during the period in question."[1] (DE 42 at 12.) The court also found that genuine issues of material fact remained with respect to the

---

[1] This case involves several related entities with similar names but different nationalities. Some of the entities, to which the court will refer collectively as "Zapata entities," have names such as "Zapata Gulf Marine Corporation" or "Zapata Gulf Crews, Inc." Some of the entities, to which the court will refer collectively as "Tidewater entities," have names such as "Tidewater Marine, Inc.," or Tidewater Crewing Limited."

nationality of Mr. Weyland's employers for the period in question. *Id.*

At the pretrial conference on June 26, 2007, in response to a series of questions from the court, the parties suggested that the nationality of Mr. Weyland's employers and all other remaining matters related to the plaintiffs' underlying tax liability were issues of law on which the court could rule before trial. At the court's direction, the parties then filed the briefs and memoranda of law presently before the court, both of which incorporate and refer to some of the parties' past arguments.[2] Therefore, the court will construe these most recent briefs and memoranda of law as timely, renewed, and contested cross-motions for summary judgment on the underlying tax liability issue.

Before the pretrial conference, the parties filed several motions in limine or motions for judicial notice. *See* DE 62, 63, 70, 80, 87. With one partial exception, these motions present inseparably mixed questions of law and fact related to the scope of testimony of potential witnesses, and the court has indicated that it will resolve these motions, if necessary, at trial. Therefore, the court will deny these motions without prejudice. Based on the parties' most recent pleadings, the court

---

[2] More specifically, the plaintiffs seek to "incorporate their previous Motion and Memorandum in support of Partial Summary Judgment on Tax Liability (DE 29), their Reply on that issue (DE 38), and their Renewed Motion for Partial Summary Judgment (DE 47), as well as all exhibits thereto." (DE 91-1 at 1 n.1.)

On the other hand, in response to the plaintiff's motion in limine discussed in this order, the defendants have referred to their motion to alter, amend, or vacate (DE 51) as presently "pending." (DE 86 at 2 n.1.)

Where relevant, these motions, and the arguments contained therein, are discussed below in greater detail.

3

now finds that the plaintiffs' motion in limine with respect to W. Thomas Cooper (DE 80) presents certain separable issues of law which are appropriate for review along with the parties' broader arguments on the underlying tax liability issue.

## II.     STANDARD OF REVIEW

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the opposing party. *Id.* A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue exists only when there is sufficient evidence on which the jury could reasonably find for the opposing party. *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

The initial burden of showing the absence of a genuine issue of material fact is on the moving party. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must come

forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*).  Evidence that is "merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 249 (internal citations omitted).  Furthermore, "the moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only 'show – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (quoting *Celotex*, 477 U.S. at 325).

### III. ANALYSIS

The plaintiffs have consistently claimed that their underlying tax liability is an issue of law, with "no material disputed facts to preclude a finding in that regard." (DE 91-1 at 1.)  The defendants have consistently disagreed, maintaining that significant disputed issues of fact regarding the underlying tax liability do exist.  Any legal determination about the underlying tax liability must begin with 26 U.S.C. § 3121.

The plaintiffs rely on a single argument: they contend that the plain language of § 3121, applied to the undisputed facts, shows that they were not liable for social security tax for the period in question.  Therefore, the plaintiffs request the following ruling: first, that "Mr. Weyland's earnings were not subject to any FICA tax during any portion of the period from 1986 through 2001 when he worked on a

non-American vessel"; and second, that "as an employee, Mr. Weyland was only liable for 50% of the FICA tax on his earnings that were subject to FICA tax." (DE 91-1 at 5.)

The defendants rely on two arguments. First, they claim that significant factual disputes remain, which preclude summary judgment in the plaintiffs' favor on the underlying tax liability issue, and which, if they are ultimately resolved in the defendants' favor at trial, will demonstrate that the plaintiffs were liable under § 3121 for FICA tax for the period in question. Second, the defendants suggest that even if these factual disputes are resolved in the plaintiffs' favor at trial, the operation of the provisions of § 3121(b)(4), upon which the plaintiffs rely, will also change Mr. Weyland's status for the years in question from that of "an employee under § 3121" to that of a self-employed individual liable for social security contributions. (DE 92-1 at 4.) Therefore, the defendants conclude that regardless of the ultimate resolution of these disputed issues of fact, the court should rule, as a matter of law, that the plaintiffs were "liable to the United States for social security tax on Richard Weyland's earnings from 1986 through 2003." (DE 92-4 at 1.)

Below, the court will review the alleged factual disputes and then address the parties' substantive legal arguments.

**A.    The Alleged Factual Disputes**

    **1.    Mr. Weyland's Status as an Employee**

No factual dispute remains as to whether Mr. Weyland was treated as an employee for the period in question, because the court has already ruled in a previous order that Mr. Weyland "was an employee of at least one Zapata entity and one Tidewater entity during the period in question." (DE 42 at 12.) Nevertheless, in their response to the plaintiffs' motion in limine presently before the court (DE 86), the defendants have raised two arguments about this settled issue.

First, the defendants claim that the court's determination about Mr. Weyland's status was "based on the common law of agency and not the statutory language of the Internal Revenue Code." (DE 86-1 at 2.) Therefore, the defendants argue, Mr. Weyland's status remains an open issue because "[t]he decision at common law of whether an individual is an independent contractor or an employee is a different issue than [whether] an employee is defined under the Internal Revenue Code." *Id.* The court need not and will not consider this argument at any greater length because the factual claim about the court's previous opinion, upon which this argument is based, is incorrect. The court's determination about Mr. Weyland's status was expressly based on specific and repeated references to the relevant statutory language.[3] *See* DE 42 at 4-9 (repeatedly citing

---

[3] Furthermore, the court can discern no basis in law for the distinction between the alleged "common law" basis for the court's previous finding that Mr. Weyland was an employee and the statutory basis for such a determination allegedly required under the Internal Revenue Code. According to 26 U.S.C. § 3121(d)(2), "the term 'employee'" refers to "any individual who, *under the usual common law rules* applicable in determining the employer-employee relationship,

7

and quoting 26 U.S.C. § 3121 and discussing 26 U.S.C. § 1401, where relevant to the defendants' argument).  Accordingly, while it remains an open issue whether Mr. Weyland's payment for the period in question constituted taxable wages for employment under 26 U.S.C. § 3121(b), there is no remaining issue of law or fact as to his status as an employee.

Second, the defendants claim that "[a] motion is pending before the Court (DE 51) concerning the Court Order of March 26, 2007 (DE 42) on this issue" of Mr. Weyland's status as an employee.  (DE 86-1 at 1 n.1.)  This is also incorrect.  The defendants' motion to alter, amend, or vacate the court's previous order (DE 51) is not currently pending before the court.  In the half-page motion at issue, the defendants asked the court to alter, amend, or vacate its previous finding that Mr. Weyland was an employee based on unspecified depositions which were "scheduled for April 9, 2007, of Tidewater, Inc. employees."  (DE 51-1 at 1.)  The defendants requested "that the issue of whether Mr. Weyland was an employee or an independent contractor . . . remain open for the purpose of these evidentiary depositions[,]" and they "agree[d] to file a memorandum regarding how those depositions impact the issue within a reasonable time of receipt of the transcripts."  *Id.*

The court denied this motion as untimely on April 30, 2007 (DE 72).  No explanatory memorandum supporting the original motion (DE 51) was ever filed by

---

has the status of an employee" (emphasis added).

the defendants.  The only elaboration of the assertions in this motion occurred on June 8, 2007, in the defendants' response to the plaintiffs' motion in limine presently at issue.  More specifically, in this response the defendants claim that "[a]fter the deposition of Mr. Quist, Assistant General Counsel for Tidewater, Inc., . . . new evidence has come to light on this issue of independent contractor versus employee."  (DE 86-1 at 2 n.1.)  Although the defendants have filed a motion in limine based on Quist's deposition,[4] aside from this assertion, they have not explained exactly how Quist's deposition testimony sheds new light on Mr. Weyland's status.  Accordingly, the court reiterates its previous finding: no factual issue exists at this time as to Mr. Weyland's status as an employee during the years in question.

### 2. The Nationality of Mr. Weyland's Employer

In its previous order, the court concluded that partial summary judgment on the issue of tax liability was inappropriate "because a reasonable juror could conclude that at least on April 12, 1999, Mr. Weyland was employed by an American entity known as 'Tidewater Marine.'"  (DE 42 at 10-11.)  In reaching this conclusion, the court expressly recognized the substantial contrary evidence presented by the plaintiffs.  *See, e.g.*, *id.* at 10 (recognizing "that the plaintiffs

---

[4]  In their motion in limine (DE 87), the defendants object to five portions of Quist's deposition testimony: the first, fourth, and fifth based on hearsay grounds; the second on "lack of personal knowledge" grounds; and finally, the third on the grounds of the question's form.  The court finds no support in this motion for the defendants' arguments about Mr. Weyland's status as an employee.

have presented a great deal of evidence in support of their position, including a retroactive refund from the IRS"). Nevertheless, the court concluded that summary judgment was inappropriate based on a "Verification for Employment" form,[5] which the Weylands completed on April 12, 1999, in order to obtain an otherwise unrelated loan. As the court previously found, according to this form, Mr. Weyland was employed by an entity called "Tidewater Marine" with an address of "200 Ford Industrial Road" in Amelia, Louisiana, and he began working for Tidewater Marine on December 14, 1977.[6]  *Id.* at 9-10 (citing DE 31-3 at 1).

On March 30, 2007, the plaintiffs filed a renewed motion for summary judgment on the tax-liability issue (DE 47). No response was ever filed to this motion, but on April 30, 2007, after a pretrial conference, the court denied the motion as untimely and ordered the parties to convene a settlement conference. (DE 72 at 1.) Because the plaintiffs seek to incorporate this motion in their most recent supplemental brief (DE 91), the court will construe it as a renewed motion and address its substantive arguments and exhibits.

Payroll histories for Mr. Weyland from 1986 through 2006 are attached to the plaintiffs' renewed motion for summary judgment. *See* DE 47-2 at 2. These

---

[5] This form was filed under seal by the defendants on February 2, 2007, and docketed as DE 31-3.

[6] As noted in the court's previous order, this "form was filled out and signed on April 12, 1999, by Buffy R. Besson, who appears to have been employed by Tidewater Marine's personnel department." (DE 42 at 9-10 (citing DE 31-3 at 1).) This form also appears to have been signed by both Weylands. *See* DE 31-3 at 2.

payroll histories reveal that Mr. Weyland was paid by Zapata Gulf Crews, Inc., and Tidewater Crewing Ltd., from 1986 through 2006. The court has previously acknowledged that "[t]here is no dispute about the existence or nationality of either of these specific entities." (DE 42 at 4.) According to the plaintiffs, this payroll exhibit represents Mr. Weyland's complete payroll history from 1986 through 2006. Therefore, they claim that the court should find, as a matter of law, that the plaintiffs were not liable to the United States for any FICA tax on Mr. Weyland's relevant earnings because "[t]here is *no* evidence he was paid by any other employer during this time." (DE 47-1 at 1 (emphasis in original).)

Although the defendants have not produced any payroll evidence to support their position, as discussed above, they *have* produced a document signed by both the plaintiffs and by a woman who purports to be a representative of Mr. Weyland's American employer, which indicates that Mr. Weyland was employed by an American entity (and which describes Mr. Weyland's earnings over a three-year period). Therefore, although there may be no *payroll* evidence indicating that Mr. Weyland was paid by an American employer during the period at issue, contrary to the plaintiffs' claim, there is *some* evidence that Mr. Weyland was paid by an American employer during this time. Again, although the court recognizes that the plaintiffs have presented a great deal of evidence to support their motion for summary judgment, the court reiterates its previous finding that this Verification of Employment form creates a genuine issue of material fact on this issue.

11

At the most recent hearing before the court, the plaintiffs suggested that the parties had reached agreement as to the nationality of Mr. Weyland's employer. As noted above, however, the defendants continue to contest this issue. *See* DE 92-1 at 1 n.1 (stating that "[t]here still is a factual dispute . . . whether [Mr. Weyland's] employer was an American employer"). Therefore, the court concludes that genuine issues of material fact related to the nationality of Mr. Weyland's employer continue to preclude summary judgment on the plaintiffs' underlying tax liability, even aside from the nationality of the relevant vessel or vessels.

### 3.     The Nationality of the Relevant Vessel or Vessels

The parties agree that whether Mr. Weyland's service was performed in connection with an American vessel remains in dispute. *See, e.g.*, DE 92-1 at 1 n.1 (stating that "[t]here still is a factual dispute whether Mr. Weyland performed service in connection with an American vessel"); DE 91-1 at 5 (seeking a ruling on the tax liability issue only with respect to any portion of the period at issue when Mr. Weyland "worked on a non-American vessel"). Accordingly, along with the nationality of Mr. Weyland's employer or employers, the nationality of the relevant vessel or vessels is a disputed issue of fact to be proven at trial.

### B.     The Parties' Substantive Arguments

### 1.     The Plaintiffs' Arguments

According to the plaintiffs, they were not required to pay social security taxes for the years in question because, under 26 U.S.C. § 3121(b)(4), taxable

wages do not include payments received for service on a foreign vessel or aircraft outside the United States for a foreign employer. More specifically, § 3121(a) defines "the term 'wages'" as "all remuneration for employment, including the cash value of all remuneration (including benefits)" paid in any other medium besides cash. The general provisions of § 3121(b) define "the term 'employment'" as "any service, of whatever nature, performed (A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or (ii) on or in connection with an American vessel[,]" provided that this service meets certain additional terms not presently at issue. Section 3121(b) also generally defines the term "employment" as any service, of whatever nature, performed "(B) outside the United States . . . as an employee for an American employer" as defined elsewhere in the statute.[7] The relevant portions of § 3121(b)(4) provide an exception to this definition: "employment," for the purposes of § 3121, shall not include any "service performed by an individual on or in connection with a vessel not an American vessel, . . . if (A) the individual is employed on and in connection with such vessel . . . when outside the United States and (B) . . . the employer is not an American employer." Therefore, "under the plain language of 26 U.S.C. § 3121(b)(4) and the undisputed facts established

---

[7] Section 3121(h) defines "the term 'American employer'" in five ways: first, as "the United States or any instrumentality thereof"; second, as "an individual who is a resident of the United States"; third, as "a partnership, if two-thirds or more of the partners are residents of the United States"; fourth, as "a trust, if all of the trustees are residents of the United States"; and fifth, as "a corporation organized under the laws of the United States or of any State."

in the record," the plaintiffs argue, the court "should hold that Mr. Weyland was not liable for FICA tax during any period in which he worked upon a non-American vessel between 1986 and 2001." (DE 91-1 at 3.)

The meaning of these statutory provisions, as applied to this case, is straightforward, but the unresolved factual issues discussed above – both the nationality of Mr. Weyland's employers and the nationality of his vessels – will ultimately determine the the issue of tax liability. If the plaintiffs can show at trial that Mr. Weyland's relevant work was performed on or in connection with a vessel that was not an American vessel, and if they can also show at trial that this work was performed for an employer that was not an American employer, they will have shown that the relevant work qualifies for the exception of § 3121(b)(4). On the other hand, if the plaintiffs fail to show either that Mr. Weyland's work was performed on or in connection with a non-American vessel, or that this work was performed for a non-American employer, they will have failed to show that the relevant work qualifies for the exception of § 3121(b)(4). At present, however, these disputed material issues of fact prevent any legal conclusion on this issue.

2.   **The Defendants' Arguments**

Although the defendants continue to contest the factual issues related to the plaintiffs' argument, they also suggest that even if the remaining factual disputes are resolved in the plaintiffs' favor, the court should still find, as a matter of law, that the plaintiffs were required to pay social security tax for the relevant period at

14

issue.  Although this is, in essence, an untimely motion to dismiss, the court will decide it nonetheless because it raises legal issues that need to be resolved before trial.

According to the plaintiffs, the plain language of § 3121 "exempts income from FICA tax when the income is earned by an employee working on a foreign ship outside the United States for a foreign employer."  (DE 91-1 at 1-2.)  But the defendants suggest that the court should rule as a matter of law that the plaintiffs were liable for tax even "assuming Mr. Weyland worked for a non-American vessel and for a non-American employer" during the period at issue.  (DE 92-1 at 4.)  If Mr. Weyland worked on a foreign ship outside the United States for a foreign employer, the defendants argue, "then he is not an employee within the meaning of § 3121[,]" and therefore, his relevant "earnings should be considered income for purposes of 26 U.S.C. § 1402(a), net earnings from self-employment."  *Id.*  Accordingly, regardless of the resolution of the disputed fact issues, the defendants conclude that they are entitled to a ruling as a matter of law on the underlying tax liability issue: to the extent that the disputed fact issues are resolved in the defendants' favor, the plaintiffs' argument fails; and to the extent that the disputed fact issues are resolved in the plaintiffs' favor, the defendants conclude that the plaintiffs were "liable to the United States for social security tax on Richard Weyland's earnings" as the earnings of a self-employed individual.  (DE 92-4 at 1.)

The defendants' argument conflates the meaning of taxable "employment,"

as defined in § 3121(b), with Mr. Weyland's status as an "employee," as defined elsewhere in the statute. According to the defendants, if Mr. Weyland is found to have worked on a foreign ship outside the United States for a foreign employer, then he cannot have been an *employee* within the meaning of § 3121, but this conclusion does not necessarily follow from their premise. Under the statutory provisions at issue, if Mr. Weyland is found to have worked on a foreign ship outside the United States for a foreign employer, then according to § 3121(b)(4), that work will not have been taxable employment under the general provisions of § 3121(b), but § 3121(b)(4) neither suggests nor implies that Mr. Weyland's status must also change from an *employee* to a *self-employed individual*, nor have the defendants offered any pertinent legal support for such a leap.[8]

The term "employee" is defined elsewhere in the statute – specifically, in 26 U.S.C. § 3121(d) – and this statutory definition neither refers to nor depends upon the operation of § 3121(b)(4). Thus, the defendants' present argument provides no reason for the court to alter its previous conclusion: Mr. Weyland "was neither self-employed nor an independent contractor; rather, he was an employee of at least

---

[8] To support their argument, the defendants have cited two cases from the United States Tax Court, *Briant v. Commissioner*, 44 T.C.M. (CCH) 472 (1982), and *Henson v. Commissioner*, 66 T.C. 835 (1976). Neither case provides any relevant support for the defendants' position. Because § 3121 was not at issue in *Briant*, and because the ministerial exemption under § 1401 at issue in *Briant* is not at issue in the matter at hand, the court finds that *Briant* is inapposite. Because the petitioner's status as a self-employed individual was not at issue in *Henson*, and because neither § 1402(e) nor the Sai Baba Society is at issue in the matter at hand, the court finds that *Henson* is also inapposite.

16

one Zapata entity and one Tidewater entity during the period in question." (DE 42 at 12.) Accordingly, the legal argument raised by the defendants is incorrect; because Mr. Weyland was an employee under § 3121, his relevant earnings were not subject to social security tax under § 1402(a) as net earnings from self-employment.

**C.     The Plaintiffs' Motion in Limine (DE 80)**

In this motion in limine, the plaintiffs seek to exclude certain testimony from W. Thomas Cooper. According to Cooper's own report, the defendants hired him to provide an opinion "as to Mr. Peter Birkholz's professionalism and approach and as to the requirement of Mr. Richard Weyland to pay self employment taxes on his income received as remuneration for services performed on foreign vessels owned by foreign entities." (DE 80-2 at 1.) Based on his opinion and his deposition, the plaintiffs claim that Cooper intends to offer the following testimony with respect to the underlying tax liability issue: first, that "§ 3121(b)(4) has absolutely no application to this case"; second, "that any factual issues regarding Mr. Weyland's entitlement to the FICA tax exemption are wholly immaterial"; and third, "that Mr. Weyland was 'self-employed' as a matter of law for purposes of the tax code and therefore was liable for self-employment tax" under 26 U.S.C. § 1401. (DE 80-1 at 1.) According to the plaintiffs, Cooper should be prevented from offering such testimony because it constitutes a legal conclusion contrary to the court's own determination (as well as the determinations of both the IRS and Birkholz himself,

17

at least before he was fired by the plaintiffs).

In response, the defendants claim that the issues raised by Cooper's testimony are not purely legal.  Rather, the defendants claim that Cooper's testimony is relevant both for the underlying tax liability issue, "whether or not Mr. Weyland was subject to self-employment taxes[,]" and the negligence issue, which the defendants claim is "the heart of the matter, what actions would have been taken by a reasonably prudent account[ant]."  (DE 86-1 at 1-2.)  With respect to the negligence issue, the defendants claim that "[i]t does not matter how the issue of whether taxes were owed or not was legally decided, it matters how a reasonably prudent accountant would have handled this issue."  *Id.* at 2.  Therefore, at least with respect to the negligence issue, the defendants suggest that Cooper's legal analysis is not "being offered as a legal conclusion."  *Id.*

With respect to the underlying tax-liability issue,[9] the court finds that Cooper's testimony about § 3121, § 1401, and § 1402 addresses a purely legal issue, and the court further finds that Cooper's analysis of § 3121, § 1401, and

---

[9] With respect to the negligence issue, the plaintiffs claim, and the defendants do not dispute, that Birkholz never applied the analysis of § 3121, § 1401, and § 1402 presented in Cooper's testimony.  In response, the defendants assert that Cooper's testimony remains relevant for the negligence issue even though "Mr. Birkholz may not have analyzed the issue exactly as Mr. Cooper has suggested."  (DE 86-1 at 2.)

Because the issue of Birkholz's negligence will arise only if the plaintiffs are successful on the underlying tax liability issue, the court need not and will not reach this issue at this time.  Nevertheless, the court notes that the defendants' assertion of relevance does not explain *how* Cooper's alternative analysis of § 3121, § 1401, and § 1402 may become relevant to a negligence determination about the *actual* analysis Birkholz undertook.

§ 1402 differs from both the court's own determination *and* the legal arguments presently advanced by the defendants. More specifically, after considering the relevant law and the undisputed facts, the court has found and finds again today that Mr. Weyland was an employee rather than a self-employed individual, whereas Cooper concludes that Mr. Weyland was "not an employee for purposes of social – self-employment taxes," directly contrary to the court's finding. (DE 80-3 at 8.) Moreover, Cooper believes that the remaining disputed factual issues – on which the defendants continue to rely to defeat the plaintiffs' motion for summary judgment on this issue – are immaterial to the underlying tax liability issue because he believes that Mr. Weyland was obliged to pay self-employment tax based merely on the simple fact that he had nothing withheld from his earnings. *E.g.*, *id.* at 12. In contrast, as discussed above, the defendants argue that Mr. Weyland's possible status as a self-employed individual is directly based on these disputed factual issues: specifically, on the court finding or assuming that Mr. Weyland worked for a non-American vessel and for a non-American employer. (DE 92-1 at 4.) Because Cooper's testimony about § 3121, § 1401, and § 1402 differs both from the court's conclusion *and from the defendants' own arguments*, the court finds that this testimony on the underlying tax liability issue can have no relevance at trial. Accordingly,

    **IT IS ORDERED** that the plaintiffs' motion in limine (DE 80) is **GRANTED IN PART**. Insofar as Cooper's testimony about 26 U.S.C. § 1401, 26 U.S.C. § 1402,

and 26 U.S.C. § 3121 may be offered for its bearing on the underlying tax liability issue, that testimony will be excluded.

    **IT IS FURTHER ORDERED** that the parties' recent briefs and memoranda of law (DE 91, 92), which the court has construed as partial motions for summary judgment, are **DENIED**.

    **IT IS FURTHER ORDERED** that the remaining motions in limine or motions for judicial notice (DE 62, 63, 70, 87) are **DENIED WITHOUT PREJUDICE**.

    These pretrial matters having been resolved, **IT IS FURTHER ORDERED** that this matter is scheduled for trial on January 14, 2008, at 9:00 a.m.

    Signed on September 6, 2007



JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY